IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF VIRGINIA
Harrisonburg Division

| | | |
|---|---|---|
| JEFFREY WILLIAM BAILEY, ) | | |
|     Plaintiff, ) | | |
| ) | | |
| v. ) | Civil Action No. 5:14-cv-00059 | |
| ) | | |
| WASHINGTON AREA COUNCIL OF ) | | |
| ENGINEERING LABORATORIES ) | | |
| (WACEL), ) | By: | Joel C. Hoppe |
|     Defendant. ) | | United States Magistrate Judge |

REPORT AND RECOMMENDATION

Plaintiff Jeffrey William Bailey, proceeding *pro se*, filed this action against Defendant Washington Area Council of Engineering Laboratories ("WACEL"). Pending before the Court is WACEL's Motion to Dismiss Amended Complaint under Federal Rules of Civil Procedure 12(b)(1) and 12(b)(6). ECF No. 21. The motion is before me by referral under 28 U.S.C. § 636(b)(1)(B). ECF No. 12. Both parties have fully briefed the issue, I have heard oral argument, and the motion is ripe for decision. After considering the pleadings, the parties' briefs and oral arguments, and the applicable law, I find that Bailey has failed to state a claim that entitles him to relief under federal law and failed to allege this Court's jurisdiction over any remaining claims. I therefore recommend that the presiding District Judge grant WACEL's motion and dismiss the Amended Complaint.

I.     Procedural History and Facts

On November 17, 2014, Bailey filed a Complaint against WACEL and its board of directors and employees. ECF No. 2. WACEL moved to dismiss the Complaint for lack of subject matter jurisdiction and for failure to state a claim. ECF No. 7. In response, Bailey moved to amend his Complaint on January 23, 2015. ECF No. 13. The Court granted his motion, ECF

1

No. 19, and Bailey filed his Amended Complaint on February 4, 2015, ECF No. 20.[1] WACEL filed a Motion to Dismiss Amended Complaint, ECF No. 21, and brief in support, ECF No. 22, arguing that Bailey failed to allege this Court's subject matter jurisdiction or to state a claim upon which relief can be granted. Bailey filed a brief in opposition, ECF No. 26, and WACEL filed a reply brief, ECF No. 28.

When assessing factual allegations for a motion to dismiss, I must view all well-pled facts in the Amended Complaint in the light most favorable to the plaintiff. *Philips v. Pitt Cnty. Mem'l Hosp.*, 572 F.3d 176, 180 (4th Cir. 2009). In recognition of Bailey's *pro se* status and my obligation to hold his pleadings to "less stringent standards than formal pleadings drafted by lawyers," *Erickson v. Pardus*, 551 U.S. 89, 94 (2007) (per curiam), I will also consider facts presented in his brief in opposition. *Shomo v. Apple, Inc.*, No. 7:14cv40, 2015 WL 777620, at *2 (W.D. Va. Feb. 24, 2015) (considering "both the complaint and the factual allegations in Shomo's response to the motion to dismiss in determining whether his claims can survive dismissal"); *Christmas v. Arc of the Piedmont, Inc.*, No. 3:12cv8, 2012 WL 2905584, at *1 (W.D. Va. July 16, 2012) (accepting as true facts from a *pro se* plaintiff's complaint and brief in opposition to decide a motion to dismiss); *Davis v. Bacigalupi*, 711 F. Supp. 2d 609, 615 (E.D. Va. 2010) (same) (collecting cases).

WACEL is a private organization that provides certification and accreditation for engineers and engineering firms in the greater Washington, D.C. area. Am. Compl. ¶¶ 2.B, 2.D; Pl. Br. in Opp. 2. When he filed suit, Bailey was employed by Engineering Consulting Services ("ECS") as a laboratory technician in its Winchester office ("ECS Winchester"). Am. Compl. ¶ 2.A; Pl. Br. in Opp. 2; *see also* Pl. Add'l New Devs. Relevant to Case, Apr. 15, 2015, ECF No.

---

[1] WACEL's first motion to dismiss is still pending before the Court. ECF No. 7. As Bailey has since filed an Amended Complaint, I recommend denying this motion as moot.

2

30 (informing the Court that Plaintiff's employment with ECS would be terminated effective April 24, 2015). ECS maintains WACEL accreditation for its labs. Am. Compl. ¶ 2.C; Pl. Br. in Opp. 2. WACEL's laboratory accreditation requires that all laboratory employees have current individual certifications with WACEL. Pl. Br. in Opp. 2. ECS therefore required Bailey to have certain certifications as part of his employment. *Id.* In spring 2014, the time leading up to the events underlying this dispute, ECS Winchester was WACEL accredited and Bailey held five personal WACEL certifications. Am. Compl. ¶¶ 2.B, 2.D; Pl. Br. in Opp. 2.

On May 7, 2014, WACEL employee Steve Ritenour performed an annual audit of ECS Winchester. Am. Compl. ¶ 2.A. As part of the audit, he reviewed the office's calibration records. *Id.* A written summation of the records was not available at the time, so Ritenour was given access to a spreadsheet containing the raw calibration data. *Id.* Due to a later-discovered clerical error, the current year's data had not been properly saved in the spreadsheet. *Id.* ¶ 2.C. It thus appeared to Ritenour that the laboratory was claiming calibration numbers identical to the previous year, indicating fraud. *Id.* Falsifying calibration records is grounds for revoking accreditation. *Id.* ¶¶ 2.B, 2.D. Ritenour held a summation meeting with Bailey and other ECS Winchester employees and informed them that the office was in good condition. *Id.* ¶ 2.A.

In July 2014, ECS informed Bailey and his co-workers that ECS Winchester's WACEL accreditation had been suspended because of fraud by Bailey. *Id.* ¶¶ 2.B–C. ECS Winchester explained the clerical error to ECS headquarters and provided accurate calibration records for them to show WACEL. *Id.* ¶ 2.C. Also in July 2014, an employee of a different engineering firm told Bailey that he had heard Bailey was terminated from WACEL.[2] *Id.* ¶ 2.D. Bailey sent a

---

[2] In a September 21, 2014, letter from Bailey to the WACEL board of directors attached to the Complaint, Bailey states that his peer said, "Heard you got kicked out of WACEL for making up numbers." Compl. Ex. 1, at 3, ECF No. 2-1.

3

letter to WACEL requesting an explanation. *Id.*; Compl. Ex. 1, at 1, ECF No. 2-1. Thomas Cohn, Executive Director of WACEL, responded on August 6, 2014, with a letter explaining that Bailey's certifications were revoked for five years following a board of directors' vote on May 22, 2014. Am. Compl. ¶ 2.D; Compl. Ex. 1, at 2. The letter stated that Bailey could appeal this decision. *Id*. Bailey did not pursue an appeal, as the WACEL's "Quality Assurance Inspection Agency Audit Program Guide" ("Audit Guide") stated that an appeal had to be filed within three weeks of the decision. Am. Compl. ¶ 2.D.

Ritenour's inspection and the resulting disciplinary actions violated multiple provisions of WACEL's Audit Guide. In the course of his audit, Ritenour deviated from the Audit Guide twice: he performed the inspection alone rather than as part of the prescribed two-person team, and he failed to disclose at the summation meeting an issue dispositive of accreditation. *Id.* ¶ 2.A. WACEL then violated the Audit Guide by failing to provide a final audit report or grant ECS Winchester 30 days to correct any identified deficiencies. *Id.* ¶¶ 2.B, 2.D. Finally, Bailey did not hear about the termination of his personal certifications before the letter from Cohn, in violation of the Audit Guide requirement to inform affected parties of certification terminations. *Id.* ¶ 2.D.

Three years before these events, Bailey's wife attended a WACEL training class taught by Ritenour. *Id.* ¶ 2.E. She found Ritenour's conduct during the class objectionable and wrote a letter on July 12, 2011, to ECS's Mid-Atlantic office manager and board of directors detailing his "lack of professionalism, offensive language[,] and crude language." *Id.*; Compl. Ex. 1, at 6–7. ECS replied that it would conduct an investigation into the matter. Am. Compl. ¶ 2.E.

Without his WACEL certifications, Bailey cannot perform field work or handle enough tasks at ECS Winchester to accumulate his normal weekly hours, leading to decreased income.

4

*Id.* ¶ 3.A. Bailey also anticipates future costs of replacing his certifications, possible loss of employment, and inability to find new employment due to his tarnished professional image. *Id.* ¶¶ 3.A–B. Bailey seeks compensatory damages, punitive damages, legal fees, and reimbursement for ongoing mental health counseling for himself and his family. *Id.* ¶¶ 3.C–E.

## II. Discussion

WACEL challenges Bailey's amended complaint on two fronts, arguing for dismissal under Rule 12(b)(1) for failure to allege this Court's jurisdiction and under Rule 12(b)(6) for failure to state a claim upon which relief can be granted. Def. Br. in Supp. 2–4. Liberally construing Bailey's claims, he brings causes of action under federal law for violations of due process and the First Amendment, under state law for breach of contract and defamation, and under federal and state law for violation of a common law right to due process and fair procedure. Bailey expressly invokes the Court's diversity jurisdiction by alleging the parties' citizenship and an amount in controversy and implicitly invokes the Court's federal question jurisdiction by alleging causes of action under federal law.

"Federal courts are courts of limited jurisdiction. They possess only that power authorized by Constitution and statute, which is not to be expanded by judicial decree. It is to be presumed that a cause lies outside this limited jurisdiction, and the burden of establishing the contrary rests upon the party asserting jurisdiction." *Kokkonen v. Guardian Life Ins. Co. of Am.*, 511 U.S. 375, 377 (1994) (citations omitted). This Court has jurisdiction over Bailey's action against WACEL only if the Amended Complaint states a claim arising under the Constitution or federal law, 28 U.S.C. § 1331, or if the parties are citizens of different states and the amount in controversy exceeds $75,000, *id.* § 1332. I first address whether, under Rule 12(b)(6), Bailey states a plausible claim for relief that arises under the Constitution or federal law. *See Crosby v.*

*City of Gastonia*, 635 F.3d 634, 642–43 (4th Cir. 2011). As I find that he does not, I then address whether Bailey alleges this Court's diversity jurisdiction over any remaining claims. *See Patel v. Smith*, Civil No. 10-4165, 2011 WL 2746080 (E.D. Pa. July 12, 2011) (dismissing state law claims for insufficient allegations of diversity jurisdiction and federal question claims for failure to state a claim and declining to exercise supplemental jurisdiction); *Schafler v. Euro Motor Cars*, Civil No. 08-2334, 2009 WL 277625, at *4–10 (D. Md. Feb. 5, 2009) (conducting a similar analysis, but under Rule 8's requirement that a litigant invoke the court's subject matter jurisdiction with a "short and plain statement of the grounds" for it). Finding that Bailey fails to allege diversity jurisdiction, I refrain from further analysis of the Amended Complaint's merits and recommend dismissal for want of jurisdiction.

A.      Failure to State a Federal Claim

A complaint must "state[] a plausible claim for relief" that "permit[s] the court to infer more than the mere possibility of misconduct." *Ashcroft v. Iqbal,* 556 U.S. 662, 679 (2009). In making this determination, the court accepts as true all well-pled facts and construes those facts in the light most favorable to the plaintiff. *Philips*, 572 F.3d at 180. The court need not accept "legal conclusions, formulaic recitation of the elements of a cause of action, or bare assertions devoid of further factual enhancements," however, as those are not well-pled facts for Rule 12(b)(6)'s purposes. *Nemet Chevrolet, Ltd. v. Consumeraffairs.com, Inc.*, 591 F.3d 250, 255 (4th Cir. 2009) (citing *Iqbal*, 556 U.S. at 678).

Plaintiffs must plead enough facts to "nudge[] their claims across the line from conceivable to plausible," and the court should dismiss a complaint that is not "plausible on its face." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007). Determining whether a complaint states a plausible claim for relief is "a context-specific task that requires the reviewing court to

6

draw on its judicial experience and common sense." *Iqbal*, 556 U.S. at 679. Federal courts have an obligation to construe *pro se* pleadings liberally, so that any potentially valid claim can be fairly decided on its merits rather than the *pro se* litigant's legal acumen. *Rankin v. Appalachian Power Co.*, No. 6:14cv47, 2015 WL 412850, at *1 (W.D. Va. Jan. 30, 2015) (citing *Boag v. MacDougall,* 454 U.S. 364, 365 (1982)). Still, "a *pro se* plaintiff must . . . allege facts that state a cause of action, and district courts are not required 'to conjure up questions never squarely presented to them.'" *Considder v. Medicare*, No. 3:09cv49, 2009 WL 9052195, at *1 (W.D. Va. Aug. 3, 2009) (quoting *Beaudett v. City of Hampton*, 775 F.2d 1274, 1278 (4th Cir. 1985)), *aff'd*, 373 F. App'x 341 (4th Cir. 2010).

Bailey's fundamental complaint is that WACEL failed to follow its own guidelines when it audited ECS Winchester, investigated the calibration records, and suspended his certifications. Am. Compl. ¶¶ 2.A–D, 2.F. He asserts that WACEL "chose to convict and enact punishment" against him without affording him "a chance to present his defense." *Id.* ¶ 2.F. Bailey also alleges that WACEL, or at least Ritenour, acted in retaliation for his wife's complaint, *id.* ¶ 2.E, and defamed his professional reputation, *id.* ¶ 2.D–E. Read broadly, the Amended Complaint potentially states three causes of action "arising under" federal law: violation of Bailey's constitutional due process rights, retaliation for Bailey's wife's speech in violation of the First Amendment, and violation of a federal common law right to due process and fair procedure.

Bailey's first two claims arise under the Constitution. Federal law provides a vehicle in 42 U.S.C. § 1983 for private citizens to vindicate their constitutional rights. Section 1983, however, only provides a cause of action for constitutional violations committed by a "state actor"—a state government or an entity functioning as state government. *Wiggins v. 11 Kew Garden Ct.*, 497 F. App'x 262, 263 (4th Cir. 2012). A party is a state actor if it exercises power

7

"possessed by virtue of state law and made possible only because [it] is clothed with the authority of state law." *Id.* (quoting *United States v. Classic*, 313 U.S. 299, 326 (1941)). A private entity is sometimes considered a state actor in certain, exclusive circumstances identified by the Fourth Circuit:

> (1) when the state has coerced the private actor to commit an act that would be unconstitutional if done by the state; (2) when the state has sought to evade a clear constitutional duty through delegation to a private actor; (3) when the state has delegated a traditionally and exclusively public function to a private actor; or (4) when the state has committed an unconstitutional act in the course of enforcing a right of a private citizen.

*DeBauche v. Trani*, 191 F.3d 499, 507 (4th Cir. 1999). Bailey conceded at oral argument that WACEL is a private 501(c)(6) organization, as it alleges in its reply brief. Def. Reply Br. 3. WACEL is not a governmental body or agency, and the Amended Complaint does not depict any of the special circumstances that could transform its private operations into state action. A section "1983 claim cannot be premised on purely private conduct, no matter how unlawful that conduct may be." *Wiggins,* 497 F. App'x at 263 (citing *Am. Mfrs. Mut. Ins. Co. v. Sullivan*, 526 U.S. 40, 50 (1999)). The Amended Complaint thus does not state a plausible claim for violation of Bailey's First Amendment or due process rights under the Constitution.[3]

The due process inquiry does not end there, however. Some courts have identified limited circumstances when they are willing to intervene in the operations of private, not-for-profit associations like WACEL and require them to employ basic due process or fair procedure when

---

[3] Bailey's First Amendment claim contains an additional fundamental flaw. A claim for First Amendment retaliation must allege that a plaintiff engaged in protected speech, the defendant took an action adversely affecting the plaintiff's constitutionally protected speech, and a causal connection exists between the protected speech and the defendant's conduct. *Constantine v. Rectors & Visitors of George Mason Univ.*, 411 F.3d 474, 499 (4th Cir. 2005). The Amended Complaint alleges that Bailey's wife, not Bailey, wrote the letter objecting to Ritenour's conduct. Am. Compl. ¶ 2.E. Therefore, Bailey did not engage in protected speech, and the Amended Complaint fails to allege the elements of a retaliation claim even if WACEL were a state actor.

making decisions. *See, e.g.*, *Prof'l Massage Training Ctr., Inc. v. Accreditation Alliance of Career Schs. & Colls.*, 781 F.3d 161, 169–70 (4th Cir. 2015) (higher education accreditation agency); *Nat'l Ass'n of Sporting Goods Wholesalers, Inc. v. FTL Mktg. Corp.*, 779 F.2d 1281, 1284 (7th Cir. 1985) (trade association); *NAACP v. Golding*, 679 A.2d 554, 562 (Md. 1996) (civil rights organization); *Falcone v. Middlesex Cnty. Med. Soc'y*, 170 A.2d 791 (N.J. 1961) (professional medical society); *see generally* Zechariah Chafee, Jr., *The Internal Affairs of Associations Not for Profit*, 43 Harv. L. Rev. 993 (1930) (the seminal work on the subject); Jack M. Beermann, *The Reach of Administrative Law in the United States*, *in* The Province of Administrative Law 171, 186–91 (Michael Taggart ed., 1997) (providing a more recent study). This doctrine represents a departure from the traditional rule that courts do not interfere with the internal affairs or membership decisions of private, voluntary organizations. *See, e.g.*, *Found. for Interior Design Educ. Research v. Savannah Coll. of Art & Design*, 244 F.3d 521, 527 (6th Cir. 2001) (citing *Blende v. Maricopa Cnty. Med. Soc'y*, 393 P.2d 926, 929 (Ariz. 1964)); *Golding*, 679 A.2d at 558 ("We note at the outset that as a general rule, courts will not interfere in the internal affairs of a voluntary membership organization.").

     Courts' departure from traditional noninterference has been gradual and varied. For example, in 1938 the Seventh Circuit stated that "it would interfere with an accrediting association's decision to rescind a school's accreditation if the decision was 'arrived at arbitrarily and without sufficient evidence to support [it].'" *Found. for Interior Design*, 244 F.3d at 527 (alteration in original) (quoting *N. Dakota v. N. Cent. Ass'n of Colls. & Secondary Schs.*, 99 F.2d 697, 700 (7th Cir. 1938)). Two state court decisions from the 1960s, *Falcone* and *Blende*, applied a similar standard of review to admission decisions of private medical associations. *Id.* at 527. The courts in *Falcone* and *Blende* "reasoned that, because the medical societies in question

9

exercised a monopolistic power in areas of public concern, they were required to base their decisions on substantial evidence and were not allowed to act arbitrarily or unreasonably." *Id.* (citing *Falcone*, 170 A.2d at 795–800; *Blende* 393 P.2d at 929). Other state courts have construed an association's bylaws and constitution as implicit contracts between the association and its members, enforceable against both parties. *See, e.g.*, *Golding*, 679 A.2d at 561; *Gottlieb v. Econ. Stores, Inc.*, 102 S.E.2d 345, 351 (Va. 1958) (quoting *Bradley v. Wilson*, 123 S.E. 273, 275 (Va. 1924)) ("The constitution and by-laws adopted by a voluntary association constitutes a contract between the members, which, if not immoral or contrary to public policy, or the law, will be enforced by the courts."); Harvard Law Review Editorial Board, *Developments in the Law: Judicial Control of Actions of Private Associations*, 76 Harv. L. Rev. 983, 1020–22 (1963). In sum, judicial oversight of private associations over the past century has generally taken two forms: (1) ensuring associations act according to their own constitutions and bylaws and (2) requiring them to employ fair procedure or rudimentary due process when making admission and expulsion decisions. Beermann, *supra*, at 188 (stating that courts require associations to "follow their own rules and afford member rudimentary due process"); *Nat'l Ass'n of Sporting Goods Wholesalers*, 779 F.2d at 1285 (citing *Charles O. Finley & Co. v. Kuhn*, 569 F.2d 527, 542 (7th Cir. 1978)).

As the above history relates, courts derive this right to due process or fair procedure from common law, either state or federal.[4] Generally, cases warranting creation of federal common law are "few and restricted, limited to situations where there is a significant conflict between some federal policy or interest and the use of state law." *O'Melveny & Myers v. FDIC*, 512 U.S.

---

[4] I do not address whether Bailey has stated a claim for common law due process or fair procedure under state law because he has not established diversity jurisdiction for this action. *See infra*.

10

79, 87 (1994) (citations and internal quotation marks omitted). Nevertheless, a sizable body of jurisprudence exists applying federal common law due process to decisions by agencies that accredit higher education institutions. *See, e.g.*, *Prof'l Massage*, 781 F.3d 161; *Thomas M. Cooley Law Sch. v. Am. Bar Ass'n*, 459 F.3d 705 (6th Cir. 2006); *Found. for Interior Design*, 244 F.3d 521; *Auburn Univ. v. S. Ass'n of Colls. & Schs., Inc.*, 489 F. Supp. 2d 1362, 1367–70 (N.D. Ga. 2002) (outlining the development of common law due process in higher education accreditation). This year, the Fourth Circuit recognized for the first time a common law due process right in higher education accreditation. *Prof'l Massage*, 781 F.3d at 169–70. As the court related, there are policies underlying educational accreditation that make application of federal common law particularly appropriate. *Id.* Under the Higher Education Act, Title IV federal financial aid is available only to accredited educational institutions, *id.* at 167 (citing 20 U.S.C. §§ 1070 *et seq.*), and the Secretary of Education maintains a list of recognized agencies that accredit on its behalf, *id.* (citing 20 U.S.C. § 1099b). Thus, higher education accreditation agencies, though private, are the gatekeepers to federal funding, leading many courts applying common law due process to label these agencies as "quasi-public." *See, e.g.*, *id.* at 169; *Cooley*, 459 F.3d at 711; *Auburn Univ.*, 489 F. Supp. 2d at 1369.

Further, in the 1992 amendments to the Higher Education Act, Congress granted federal courts exclusive jurisdiction over "any civil action brought by an institution of higher education seeking accreditation from, or accredited by, an accrediting agency or association . . . and involving the denial, withdrawal, or termination of accreditation." 20 U.S.C. § 1099b(f); *see also Chi. Sch. of Automatic Transmissions, Inc. v. Accreditation Alliance of Career Schs. & Colls.*, 44 F.3d 447, 449 (7th Cir. 1994). While vesting jurisdiction in the federal courts does not necessarily grant authority to create federal common law, *Prof'l Massage*, 781 F.3d at 170

11

(quoting *Tex. Indus., Inc. v. Radcliffe Materials, Inc.*, 451 U.S. 630, 640–41 (1981)), "it is hard to imagine that Congress intended federal courts to adjudicate only state law claims at the same time it prohibited state courts from participating," *id*. Employing federal common law is reasonable when Congress's "grant of exclusive federal jurisdiction necessarily implies that federal law should govern disputes relating to decisions made by [accrediting agencies]." *Cooley*, 459 F.3d at 712; *see also Chi. Sch.*, 44 F.3d at 449.

The Amended Complaint's facts do not implicate the policies found in higher education accreditation that justify creation of federal common law. There is no federal funding attached to WACEL's certifications. There is no statute granting federal jurisdiction over disputes between engineers and engineering accrediting agencies. Without these federal interconnections, WACEL does not "serve[] a federal function," *Chi. Sch.*, 44 F.3d at 449, or manifest the same "quasi-public nature," *Prof'l Massage*, 781 F.3d at 171, as a higher education accrediting agency. The Fourth Circuit has only just recognized a right to federal common law due process, and only in the context of higher education accreditation. *See Prof'l Massage*, 781 F.3d at 169–70; *see also Hampton Univ. v. Accreditation Council for Pharm. Educ.*, 611 F. Supp. 2d 557, 568 (E.D. Va. 2009). On the facts presented in the Amended Complaint, no basis exists to extend this doctrine into fields lacking the compelling justifications for creation of federal common law found in higher education accreditation. *Cf. Found. for Interior Design*, 244 F.3d at 528 (finding that Michigan law controlled the claim because the accreditation agency was not approved by the Secretary of Education and therefore the dispute did not implicate federal matters). Therefore, Bailey does not state a plausible due process or fair procedure claim derived from and arising under federal law.

Finding that Bailey has failed to state a plausible claim for relief, I recommend that his claims predicated upon federal law or the Constitution be dismissed with prejudice. Because Bailey's only remaining claims originate in state law, the Court does not have jurisdiction over them under 28 U.S.C. § 1331. Before addressing the merits of the remaining claims, I must therefore determine whether Bailey has alleged the alternative basis for jurisdiction—diversity of citizenship between the parties. *See S. Walk at Broadlands Homeowner's Ass'n v. Openband Broadlands, LLC*, 713 F.3d 175, 185 (4th Cir. 2013) ("[A] court that lacks jurisdiction has no power to adjudicate and dispose of a claim on the merits.").

B.    *Diversity Jurisdiction*

In its motion to dismiss under Rule 12(b)(1), WACEL "bases its attack on the absence of allegations on the face of the complaint to support this Court's jurisdiction." Def. Br. in Supp. 2. When a defendant makes a facial challenge to jurisdiction, a court takes all well-pled facts as true, as it would in a motion to dismiss under Rule 12(b)(6), in determining whether the complaint "fails to allege facts upon which subject matter jurisdiction can be based." *Kerns v. United States*, 585 F.3d 187, 192 (4th Cir. 2009) (internal quotation marks omitted). As stated earlier, diversity jurisdiction lies where the amount in controversy exceeds $75,000 and the dispute is between citizens of different states. 28 U.S.C. § 1332. To adequately plead diversity jurisdiction, Bailey must demonstrate that the there is complete diversity of citizenship between the parties, "meaning that the citizenship of every plaintiff must be different from the citizenship of every defendant." *Cent. W. Va. Energy Co. v. Mountain State Carbon, LLC*, 636 F.3d 101, 103 (4th Cir. 2011) (citing *Caterpillar, Inc. v. Lewis*, 519 U.S. 61, 68 (1996)); *Thomas v. Omicron Dev. Corp.*, No. 7:11cv588, 2012 WL 4005531, at *1 (W.D. Va. Sept. 11, 2012). A

13

plaintiff must satisfy this pleading requirement by providing, in the complaint, "a short and plain statement of the grounds upon which the court's jurisdiction rests." Fed. R. Civ. P. 8(a).

The Amended Complaint's caption lists as defendants WACEL and its "Board of Directors and Employees." Am. Compl. 1. At oral argument, Bailey clarified that he brings suit solely against WACEL and not against any particular director or employee of the company.[5] The Amended Complaint also supplies the following jurisdictional facts: (1) mailing addresses for Bailey and WACEL, *id.*, and (2) a jurisdiction section that states in full "Western District Court of Virginia. Plaintiff seeks in excess of 75,000 [sic] in damages and Defendant(s) are located in another state," *id.* ¶ 1. These facts do not sufficiently allege citizenship for the defendant and consequently cannot demonstrate complete diversity between the parties.

A corporation is a citizen of every state in which it is incorporated and the state where it has its principal place of business. 28 U.S.C. § 1332(c)(1); *Thomas*, 2012 WL 4005531, at *2. A corporation's principal place of business is "the place where a corporation's officers direct, control, and coordinate the corporation's activities." *Turner v. Digital Broad. Corp.*, 894 F. Supp. 2d 748, 752 (W.D. Va. 2012) (quoting *Hertz Corp. v. Friend*, 559 U.S. 77, 130 (2010)) (internal quotation marks and emphasis omitted). At oral argument, counsel for WACEL conceded that the Bethesda, Maryland address in the Amended Complaint's caption is WACEL's principal place of business. The Amended Complaint does not, however, allege WACEL's state of incorporation. Without that information, the Court cannot resolve WACEL's citizenship and thus cannot determine whether complete diversity exists between the parties. Bailey has the burden to allege in his complaint that this Court has jurisdiction over his dispute

---

[5] WACEL attached an exhibit to its reply brief with the names and addresses of its current directors. Def. Reply Br. Ex A, ECF No. 28-1. Notably, this exhibit states that five of the nine current directors reside in Virginia.

14

with WACEL. The Amended Complaint does not contain enough facts to carry this burden, and it should be dismissed under Rule 12(b)(1). *See Turner*, 894 F. Supp. 2d at 753.

C.      *Supplemental Jurisdiction*

The final possible basis for the Court's jurisdiction lies in supplemental jurisdiction. A court has supplemental jurisdiction over claims that are so related to other claims that form the basis of the court's original jurisdiction as to form the same case or controversy. 28 U.S.C. § 1367(a). A court may decline to exercise supplemental jurisdiction where it has dismissed all of the claims that provided its original jurisdiction. 28 U.S.C. § 1367(b). I have found that all of Bailey's claims that could provide federal question jurisdiction fail to state a claim upon which relief may be granted and that his allegations of diversity jurisdiction are inadequate. Bailey's only remaining claims are premised on state law, and this case is in the early stages. Under these circumstances, I recommend that the Court decline to exercise supplemental jurisdiction over Bailey's state law claims and leave them for resolution in the state courts, should Bailey so choose. *See Shanaghan v. Cahill*, 58 F.3d 106, 109-10 (4th Cir. 1995).

III.     Conclusion

Bailey's federal law claims fail to state a cause of action for which the Court can grant relief, and they should be dismissed with prejudice under Rule 12(b)(6). Bailey has not demonstrated that the Court has subject matter jurisdiction over his state law claims, and that portion of the Amended Complaint should therefore be dismissed without prejudice under Rule 12(b)(1). *See S. Walk at Broadlands*, 713 F.3d at 185 ("A dismissal for . . . [a] defect in subject matter jurisdiction . . . must be one without prejudice."). I therefore recommend that the presiding District Judge **DENY** as moot the Defendant's first Motion to Dismiss, ECF No. 7, **GRANT** the Defendant's Motion to Dismiss Amended Complaint, ECF No. 21, and **DISMISS**

15

the Amended Complaint, ECF No. 20, **in part WITH PREJUDICE** and **in part WITHOUT PREJUCDICE**.

### Notice to Parties

Notice is hereby given to the parties of the provisions of 28 U.S.C. § 636(b)(1)(C):

> Within fourteen days after being served with a copy [of this Report and Recommendation], any party may serve and file written objections to such proposed findings and recommendations as provided by rules of court. A judge of the court shall make a de novo determination of those portions of the report or specified proposed findings or recommendations to which objection is made. A judge of the court may accept, reject, or modify, in whole or in part, the findings or recommendations made by the magistrate judge. The judge may also receive further evidence or recommit the matter to the magistrate judge with instructions.

Failure to file timely written objections to these proposed findings and recommendations within 14 days could waive appellate review. At the conclusion of the 14 day period, the Clerk is directed to transmit the record in this matter to the Honorable Elizabeth K. Dillon, United States District Judge.

The Clerk shall send certified copies of this Report and Recommendation to all counsel of record and unrepresented parties.

ENTER: April 28, 2015

Joel C. Hoppe
United States Magistrate Judge